LLOYD V. PRINCE *vs*. MAINE CENTRAL RAILROAD COMPANY.

Cumberland.   Opinion December 25, 1922.

*Negligence of defendant, and contributory negligence and assumption of risk on the part of plaintiff are questions of fact for the jury, and the verdict though large is not so grossly extravagant for such grievous injuries as to require revision by the court.*

In this case the negligence claimed by the plaintiff is the act of Getchell in sending him with the car without giving any warning as to the due time of the approaching train, it being conceded that it was Getchell's duty to know or inform himself as to the running time of the trains and that plaintiff was under his control.   It is also conceded that neither the plaintiff nor King had any right to place the motor car upon the rails and operate it without orders from Getchell.

The interpretation of the message left by Getchell with King was for the jury under all the circumstances of the case, and the finding of the jury that Prince was justified in believing himself included with King, and also that both were authorized to use the car, is not manifestly against the evidence.

The plaintiff was not a volunteer acting outside the scope of his employment and duty, and was not guilty of contributory negligence.

On motion by defendant.   This is an action of tort brought under the Federal Employers Liability Act to recover damages for personal injuries sustained by colliding with a locomotive of a passenger train of defendant.   The plaintiff at the time of the accident was in the employ of defendant as a signal helper and was working with a fellow

servant, another signal helper, under their superior, one Getchell, known as a signal maintainer, in Auburn near Adams Street crossing in bonding a rail, that is, making an electric connection between the rails by means of a wire in the block system.   Getchell, the immediate boss of plaintiff, sent plaintiff to one Carson a signal inspector in the employ of defendant on another block signal with a message, and on the return of plaintiff after he and the other helper, one King, had completed that job, was informed by King that Getchell had given to him instructions for them to take the gas motor hand car and go where he had gone on foot westerly to a point of trouble. Accordingly the plaintiff and King started with the hand car and soon saw a passenger train approaching around a curve.   Plaintiff and King stopped the hand car and while endeavoring to remove it from the track the locomotive of the passenger train struck them, seriously injuring plaintiff.   Defendant under the general issue and brief statement set up contributory negligence, and assumption of risk.   At the conclusion of the evidence by plaintiff, defendant introducing no evidence, defendant moved for a nonsuit which was refused, and the jury rendered a verdict of $29,965.18 for plaintiff, and defendant filed a general motion for a new trial.   Motion overruled.

The case is fully stated in the opinion.

*Hinckley & Hinckley,* for plaintiff.

*Charles B. Carter of White, Carter & Skelton,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, WILSON, DEASY, JJ.

CORNISH, C. J.   This is an action of tort for personal injuries sustained by the plaintiff on May 18, 1921, at Auburn, and is brought under the Federal Employers Liability Act of April 22, 1908, U. S. Comp. Stat. Vol. 8, Secs. 8657-8665.   The applicability of that act is admitted.   The alleged negligence of the defendant resulted in injuries which necessitated the amputation of the plaintiff's legs, leaving a stump of seven inches on the right and five inches on the left, measuring on the inside.   The defendant introduced no testimony so that the evidence offered by the plaintiff stands uncontradicted.   The jury having returned a verdict for the plaintiff in the sum of $29,965.18, the case is before the Law Court on defendant's motion for a new trial on the customary grounds.

Under the Federal Employers Liability Act, the defense of negligence of a fellow servant is not open, but plaintiff's assumption of risk, and contributory negligence in reduction of damages are open unless the injury was caused through the violation of some statute enacted to promote the safety of employees. *Foley* v. *Hines,* 119 Maine, 425. No such statutory violation is claimed here.

The outline of the facts may be briefly stated. The plaintiff is twenty-three years of age. He had worked for the defendant for nearly three years, under one Carson, a signal inspector with headquarters at Deering. He had been in Auburn five days working as a signal helper under one Getchell who was termed a signal maintainer and who was at the time his immediate boss. Another helper was David King. About seven o'clock on the morning of May 18, 1921, these three took a gas motor hand car, such as are commonly used on railroads, from the tool house at Lewiston and started for Auburn. Their first stop was at the Adams Street crossing in Auburn where the section men were replacing a broken rail. When the section men had completed their work King proceeded to bond the rail, that is to make the electric connection between the steel rails by means of a bonding wire, in order that the block system might operate. While there the block signal located a considerable distance to the westward of Adams Street toward Danville Junction, was reported to Mr. Getchell as out of order. Getchell thereupon despatched the plaintiff to go to Mr. Carson, the signal inspector in charge of that division and his superior, and who was then working with a helper on another block signal, some little distance toward the east from the Adams Street crossing, and ask him to come down and see what was the matter with this westerly block signal. Prince delivered the message and Carson put his car on the track, and with his helper and the plaintiff started toward the point of trouble. The plaintiff got off the car at Adams Street. Carson and his helper proceeded on their way. Getchell himself in the meantime had started on foot westerly to the same point of trouble, and was around a curve, and not in sight, when Prince returned. After Prince had left on his errand, and before Getchell himself started toward the west, he said to King: "Dave, as soon as you get that bonded, come down." When Prince returned from his errand King was at the Adams Street crossing alone. The bonding was nearly finished. Prince helped King for five minutes to complete the job. He then asked King what

Getchell's orders to him were and what they were to do next. King replied: "Getchell told him to take the car and come down when he finished up that bonding the rail." Thereupon they put the hand car upon the tracks and started for the place where Getchell on foot and Carson in his car had gone before. While on the way they saw a passenger train approaching them around the curve. They immediately stopped their hand car, got off and started to take the hand car off the track, King lifting the rear end and therefore facing the engine, while the plaintiff lifted the front end with his back toward the engine. They had gotten the car almost off the tracks when King tripped over the rail and fell, and the onrushing train, moving at forty to forty-five miles an hour, struck the plaintiff, crushing him between the engine and the car, with the result already described.

## 1. DEFENDANT'S NEGLIGENCE.

The negligence claimed by the plaintiff is the act of Getchell in sending him with the car to the westward without giving any warning as to the due time of the approaching train. It is conceded that it was Getchell's duty to know or inform himself as to the running time of trains and that the plaintiff as a helper was under his control.

The defendant strenuously resists the claim of negligence and says that Getchell gave no order whatever to Prince, that the only order he gave was to King, and that did not include Prince, nor direct King to take the car; that as Getchell had sole control of the car, neither King nor Prince had a right to place it on the tracks and run it; that in so doing they were both outside the scope of their employment and were mere volunteers, under the doctrine, of *Moran* v. *Street Railway*, 99 Maine, 127.

It is true that Getchell gave no direct orders to Prince, except to deliver the message to Carson and then to return to the Adams Street crossing, which he did. But that is not conclusive. It was competent for Getchell to give such orders or orders couched in such language as under all the circumstances would justify the plaintiff in believing himself included and also as authorizing the use of the car by both King and himself. And that is precisely what Getchell did, as an unprejudiced examination of the situation cannot fail to disclose. Getchell was working with his crew of two men upon the

Adams Street repair.   Before that was completed another defect at the westward was reported to him.   He sent Prince to the eastward to notify Carson and ask him to come.   Carson had as a helper one Applebee.   In that instance, as an illustration, the orders were not for Carson and his crew and car, but for Carson.   However, that was understood by the parties, because as soon as their job was done, Carson and Applebee took the car and hurried to the scene of the trouble.   They brought Prince back to his place at Adams Street, from which he had been gone about twenty minutes.   When Getchell left after sending for Carson he gave a similar message to King: "As soon as you get that bonded, come down!"   What was the fair interpretation of those words?   Not that King should start off afoot and alone down the track, leaving the car with its tools and materials by the side of the road, and leaving Prince to remain there idle.   The materials and tools would naturally be needed at the new place, and so would Prince as a workman.   The reasonable interpretation of Getchell's words to King was:   "I am going ahead.   When you get your job done here you follow on with the car and the crew and join me at the next point of trouble."   King so understood it, for he told Prince that Getchell had ordered him to take the car and come down. That is the order as he understood it, as both his words and his acts indicate.   Both Prince and King were acting in the utmost good faith, obedient, not disobedient servants, and were faithfully and promptly carrying out the wishes of their superior as they understood them, and as they had a right to understand them.

At any rate it was a question of fact for the jury to decide whether under all the circumstances and considerations the plaintiff was a mere volunteer and outside of the scope of his employment, or a faithful servant within his ordered duties.   They have sustained the plaintiff's contention and we see no reason for disturbing it.   *Moran* v. *Street Railway*, supra, has no application to this state of facts.

## 2.   CONTRIBUTORY NEGLIGENCE.

The only ground for this contention is that during the eight seconds which elapsed between the discovery of the on-coming train and the impact, the plaintiff did not conduct himself as the ordinarily prudent person under the same circumstances would have done, having due regard for the rights of others as well as of himself.   In such an

emergency as was there presented it is impossible to act with absolute coolness and repose. The law neither requires nor expects it. Apparently the plaintiff and his companion King, thinking that the hand car with its load of materials and tools weighing several hundred pounds might afford a serious obstruction to the train and endanger the lives on board, used every effort to remove it from the tracks and thereby save others as well as themselves. They had nearly accomplished their purpose when King tripped and fell, and then the collision occurred. Such altruistic conduct on their part hardly deserves reproach, legal or moral, and a railroad company would naturally be expected to commend rather than condemn its employees for such noble action. The jury have evidently found no contributory negligence on the part of the plaintiff and that finding we are far from wishing to disturb.

3. ASSUMPTION OF RISK.

Evidence on this point, is entirely lacking, and in fact this contention is not seriously urged by the defendant.

4. EXCESSIVE DAMAGES.

This verdict of $29,965.18 is very large in amount, but the injuries were very grievous both in nature and extent, and required two operations. A trunk of a young man is left to go through life, with all the attendant losses, deprivations, and suffering both physical and mental. It is unnecessary to recite them. The picture paints itself. While the award is huge it is not in our opinion so grossly extravagant as to require revision by this court.

*Motion overruled.*